**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARVIN GREEN,** | ) | |
| # 432484, | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 3:17-cv-01293 |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **TENNESSEE, STATE OF,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### M E M O R A N D U M

Marvin Green, an inmate of the Trousale Turner Correctional Center in Hartsville, Tennessee, filed this *pro se, in forma pauperis* action against the State of Tennessee, Core Civic, Warden Rusty Washburn, and Correction Care Solutions under 42 U.S.C. § 1983, alleging violations of his civil rights. (Docket No. 1).

The court notes that the plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g) because he has, on at least six prior occasions, filed a civil action or an appeal that was dismissed as frivolous, malicious or for failure to state a claim. (*See* Docket No. 7 at 2)(citing cases). However, the court previously determined that the plaintiff has established that he is under an imminent danger of serious physical injury and therefore has successfully demonstrated that he falls within the exception to the PLRA's "three-strikes" rule. (*Id.* at 3-4).

In the same order, the court took judicial notice of the fact that local jails experienced an outbreak of scabies in 2016 and 2017. (*Id.* at 3). Scabies "is not an infection, but an infestation. Tiny mites . . . set up shop in the outer layers of human skin. The skin does not take kindly to the invasion. As the mites burrow and lay eggs inside the skin, the infestation leads to relentless itching and an angry rash." http://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-

overview (July 13, 2017). According to the World Health Organization, scabies infestation "is frequently complicated by bacterial infection, leading to the development of skin sores that, in turn, can cause more serious consequences such as septicaemia, heart disease and chronic kidney disease." http://www.who.int/lymphatic_filariasis/epidemiology/scabies/en/ (March 6, 2018). (*Id.* at 3).

## I.   PLRA Screening Standard

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the

complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

The plaintiff brings his claims pursuant to 42 U.S.C. § 1983.   Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."   To state a claim under § 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.   *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III.    Alleged Facts

According to the complaint, while incarcerated at the Trousdale Turner Correctional Center, the plaintiff filed for a "sick call" (an appointment to see the facility physician) on approximately August 7, 2017.  On September 7, 2017, the plaintiff received his infirmary pass and told his pod officer that he needed to report to the infirmary.  The officer told the plaintiff that he could not leave his cell because the prison was on lock-down.  The pill nurse came to the plaintiff's cell to give medication to another inmate, and the plaintiff asked her if he could leave his cell to report to the

infirmary. The pill nurse "said no one is going to sick-call because the nursing staff feel[s] unsafe." (Docket No. 1 at 2).

On September 12, 2017, at approximately 2:45 a.m., the plaintiff told his pod officer that he needed an emergency sick call. The nurse came to the plaintiff's pod, and the plaintiff stated that he was "itching all over [his] body real bad." (*Id.* at 2). The nurse told the plaintiff that his itching was not an emergency and that he would need to submit for a non-emergency sick call. The nurse told the officer to put the plaintiff back in his cell.

On September 13, 2017, the plaintiff told the nurse again that he needed medical attention. She told him to submit for a sick call. The plaintiff told her that he had tried but the staff had told the plaintiff that he could not go to sick call and that his "problems are getting worse until [he] can't sleep." (*Id.* at 3). The nurse noted the plaintiff's name and TDOC number and stated that she would try to get the plaintiff to medical.

On the following day, the plaintiff received an infirmary pass. While waiting to see the doctor, the plaintiff overheard a conversation about other inmates experiencing the same itching symptoms and the medical staff had given those inmates itch cream. When the plaintiff was called for his sick call request, the plaintiff reported his symptoms to the nurse and "she replied that she don't know what to do, and referred me to a different nurse." (*Id.*) The plaintiff was then taken to a different nurse, who brought the plaintiff "in-front of (3) different nurses and was ask[ed] what the problem is, and then the nurse took 4 tubes of blood" from the plaintiff. (*Id*). The plaintiff asked the nurse to ask the doctor if the plaintiff could get something to help his itching. The doctor said "no." (*Id.*) The plaintiff was returned to his cell without any diagnosis, treatment, or treatment plan. Upon his return, he asked for a form so that he could file a grievance, but the plaintiff was told that there were no grievance forms. (*Id.* at 4).

**IV.    Analysis**

The plaintiff names the State of Tennessee, Warden Rusty Washburn, and Correction Care Solutions as defendants to this action.    As to the State of Tennessee, the Eleventh Amendment to the United States Constitution prohibits suits against a state in federal court for damages. *Kentucky v. Graham,* 473 U.S. 159, 169-70 (1985).  Furthermore, a state is not a person within the meaning of § 1983. *Will v. Michigan*, 491 U.S. 58, 71 (1989)("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  The plaintiff's claims against the State of Tennessee, therefore, are barred by the Eleventh Amendment and do not fall within the purview of § 1983.  *See Horton v. Martin,* 137 F. App'x 773, 775 (6th Cir. 2005) (dismissing damages claim against state parole board under the Eleventh Amendment)(citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984)).

In any event, the plaintiff has not alleged any specific personal involvement by the State of Tennessee in the events described in the complaint.  A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller v. Calhoun Cnty.,* 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).   Thus, the plaintiff's allegations    against the State of Tennessee fail to state claims upon which relief can be granted.

The plaintiff's claims against Washburn appear to be based solely on his role as Warden, and the plaintiff does not allege that the Warden had direct participation in health care decisions regarding any particular inmate, including the plaintiff.  Thus, the plaintiff's claims against Warden Washburn must be dismissed.

Finally, the plaintiff names Correction Care Solutions as a defendant.    According to the complaint, Correction Care Solutions is the entity responsible for providing medical care to inmates

at the Trousdale Turner Correctional Center. Although the plaintiff did not name any individual medical providers as defendants to this action, in the narrative portion of the complaint the plaintiff alleges that actions of five Correction Care Solutions nurses and one physician violated the plaintiff's rights under § 1983.

The Eighth Amendment to the United States Constitution imposes upon a county an obligation to provide its inmates with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *See Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *See Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984).

Because Correctional Care Solutions performs a traditional state function in operating a state prison, Correction Care Solutions acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). However, unlike the state, Correction Care Solutions is not entitled to Eleventh Amendment immunity and may be liable under § 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Correction Care Solutions liable, the plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability for failure to diagnose and treat the plaintiff properly for his itching and inability to sleep attaches only if Correction Care Solution's policies were shown to be the "moving force" behind the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, liberally construing the *pro se* complaint, the plaintiff alleges that Correction Care

Solutions's policies, including those policies concerning the medical treatment of inmates, are responsible for the plaintiff's injuries.[1]  Of course, what the plaintiff claims are policies may not be policies and may not have resulted in the deprivation of the plaintiff's constitutional rights.  However, these particulars can be sorted out during the development of this case.  For purposes of the initial screening of the plaintiff's claims against Correction Care Solutions required by the PLRA, the court finds that the complaint states non-frivolous Eighth Amendment claims against Correction Care Solutions.

## V.      Conclusion

Having screened the complaint under the PLRA, the court finds that all claims will be dismissed for failure to state claims upon which relief can be granted except the plaintiff's Eighth Amendment claims under § 1983 against Correction Care Solutions.  These claims survive the required PLRA screening and shall proceed for further development.  28 U.S.C. § 1915A.

The plaintiff will be permitted to amend his complaint upon timely request for purposes of alleging the identities of the five nurses and one physician employed by Correction Care Solutions allegedly involved in the violation of the plaintiff's Eighth Amendment rights.

An appropriate order will be entered.

ENTER this 21st day of May 2018.

_____
Aleta A. Trauger
United States District Judge

---

[1] The plaintiff alleges that whatever is causing his extreme itching–possibly scabies–has gone undiagnosed and untreated for months.