UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARVIN GREEN,

    Plaintiff,

v.

STATE OF TENNESSEE et al.,

    Defendants.

Case No. 3:17-cv-01293

Magistrate Judge Alistair E. Newbern

## MEMORANDUM OPINION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Marvin Green's incarceration at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. (Doc. No. 43.) Green alleges that Defendants Correct Care Solutions (CCS) and Shindana Feagins, M.D., were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to receive adequate medical care while incarcerated. (*Id.*) By the parties' consent, this action is referred to the Magistrate Judge to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.[1] (Doc. Nos. 24, 49, 86.)

Before the Court are the parties' cross motions for summary judgment (Doc. Nos. 71, 77–79). For the reasons that follow, the defendants' motion for summary judgment will be granted and Green's motions for summary judgment will be denied.

---

[1] This action was reassigned to the undersigned Magistrate Judge on January 21, 2020. (Doc. No. 86.)

## I. Background

### A. Factual Background[2]

On September 14, 2017, Green visited the TTCC clinic for a sick call. (Doc. Nos. 43, 71-1, 73.) The defendants assert in their statement of undisputed material facts that Green "complained of tingling all over his body that d[id]n't itch and that ke[]p[t] him awake . . . ." (Doc. No. 73, PageID# 347, ¶ 2.) Green "was referred to a nurse practitioner for further treatment, and lab work was performed the same day . . . ." (*Id.* at PageID# 348, ¶ 3.) Notes in Green's TTCC medical records signed by LPN Melanie Manzo, a CCS employee, support that Green complained of tingling that kept him awake during this clinic visit and was "[r]eferred to [an] NP for further treatment." (Doc. No. 71-1, PageID# 322.) Medical records also support that Dr. Feagins, another CCS employee, ordered labs for Green on September 14, 2017. (Doc. No. 71-1.)

Green disputes that a referral took place on September 14, 2017. (Doc. No. 83.) He states that, after he told Manzo he was "'itching late at night/early morning hours and it ke[]p[t] [him] awake at night[,]' . . . Manzo took [his] vital signs and stepped out of the medical room. When she returned . . . she stated [that] Dr. Feagins order[ed] lab work." (Doc. No. 77, PageID# 450–51.) After Manzo "completed the lab work," Green asked her if he could "'have something for [his] itching and inability to sleep'" and "[s]he stated she would ask the doctor." (*Id.* at PageID# 451.) When she "returned to [the] medical room, she stated th[at] Dr. Feagins said 'No'." (*Id.*) Green asserts that he "left the infirmary with no treatment and/or diagnos[is]." (*Id.*)

---

[2] The facts in this section are drawn from Green's verified amended complaint (Doc. No. 43); Green's summary judgment exhibits (Doc. Nos. 74-1–74-11); Green's declarations submitted in support of summary judgment (Doc. Nos. 77, 78); the defendants' statement of undisputed material facts (Doc. No. 73) and Green's response in opposition to that statement (Doc. No. 83); and the defendants' summary judgment exhibits, including Dr. Feagins's affidavit and Green's TTCC medical records. (Doc. No. 71-1).

Green's medical records show that lab results regarding the specimens collected from him on September 14, 2017, were faxed to TTCC on September 17, 2017. (Doc. No. 71-1.) There is no dispute that, on September 20, 2017, FNP Dorothy Crowder ordered Permethrin cream for Green, which is a lotion used to treat scabies. Green was provided with the prescribed cream on the same day. (Doc. Nos. 71-1, 73, 83.)

### B. Procedural History

Green initiated this action on September 21, 2017, by filing a complaint under 42 U.S.C. § 1983 alleging constitutional violations against the State of Tennessee; Core Civic, the private contractor that operates TTCC; TTCC Warden Rusty Washburn; and CCS. (Doc. No. 1.) The Court granted Green's motion to proceed *in forma pauperis* and screened his original complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, finding that Green had stated a colorable claim that CCS's policies caused a deprivation of his Eighth Amendment rights but dismissing all other claims and defendants. (Doc. Nos. 9, 10.)

On September 12, 2018, the Court received two motions to amend the complaint from Green asking for leave to add several additional defendants, including Dr. Feagins. (Doc. Nos. 27–28-1.) The Court initially denied Green's motions to amend on December 18, 2018. (Doc. No. 34.) However, following a hearing, the Court reconsidered its prior order and, on May 1, 2019, allowed Green to assert claims against Dr. Feagins in an amended pleading and denied Green's attempts to add claims against any other defendants. (Doc. No. 42.) The amended complaint, which is the operative pleading in this action, was entered on May 1, 2019. (Doc. No. 43.) Green alleges that the defendants violated his Eighth Amendment rights by failing to diagnose and treat him on September 14, 2017. (*Id.*) CCS and Dr. Feagins answered the amended complaint on May 17, 2019, and May 28, 2019, respectively. (Doc. Nos. 45, 47.)

CCS and Dr. Feagins filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 71), supported by a memorandum of law (Doc. No. 72), a statement of undisputed material facts (Doc. No. 73), and several exhibits (Doc. No. 71-1). The defendants argue that they are entitled to summary judgment because, based on the record evidence, Green cannot show that Dr. Feagins violated his constitutional rights or that CCS's policies caused any constitutional violation. (Doc. No. 72.) Green responded in opposition to the defendants' summary judgment motion and statement of undisputed material facts (Doc. Nos. 82, 83), arguing that Dr. Feagins violated his Eighth Amendment rights by refusing to diagnose and treat him on September 14, 2017, and that this violation was caused by CCS's failure to train its employees (Doc. No. 82).[3] The defendants filed a reply, reiterating their arguments that the record evidence does not support a finding of any constitutional violations. (Doc. No. 96).

Green then filed cross-motions for summary judgment, arguing that there is no genuine dispute that CCS's policy of failing to train its employees caused Dr. Feagins to violate Green's Eighth Amendment rights and that he is entitled to summary judgment and monetary damages. (Doc. Nos. 77–79.) Green filed several exhibits in support of his cross-motions. (Doc. No. 74, 74-1–74-11.) The defendants responded in opposition to Green's cross-motions for summary judgment, arguing that Green "has failed to properly support his statements and assertions as required by Rule 56 . . . and Local Rule 56.01" because he has "not properly cited to the record to evidence support of said statements." (Doc. No. 91, PageID# 488.) Green filed a sworn statement in reply, asserting that he is entitled to summary judgment because "[t]he defendants knew [he]

---

[3] Green styled his responses as motions to oppose the defendants' summary judgment motion and statement of undisputed material facts. (Doc. Nos. 82, 83.) However, as the Court explained in a prior order, no motions are required to file these responses in opposition. (Doc. No. 107.)

was suffering from scabies and made [him] wait for approximately 7 days to get Permethrin lotion[ ]." (Doc. No. 100, PageID# 517, ¶ 3.)

II.     **Legal Standard**

In resolving motions for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or,

5

alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

**III.    Analysis**

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Green claims that Dr. Feagins and CCS violated the Eighth Amendment, which "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v.*

6

*Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Specifically, Green argues that he is entitled to summary judgment because Dr. Feagins deprived him of his Eighth Amendment rights by failing to diagnose and treat his scabies on September 14, 2017, and because CCS's policy of failing to train its employees caused the deprivation. The defendants argue that they are entitled to summary judgment because the record evidence does not support Green's claims that they violated his Eighth Amendment rights or that any CCS policies caused such a violation.[4]

### A. Green's Claims Against Dr. Feagins

An Eighth Amendment medical deliberate indifference claim against an individual actor has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires showing the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the prison official had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Courts determine this subjective component "'in light of the prison authorities' current attitudes and conduct.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The Supreme Court has

---

[4] The defendants have not disputed that they are state actors for purposes of liability under § 1983. Because the defendants perform the traditional state functions of operating a prison and providing medical services to persons in state custody, they act under color of state law and are subject to suit under 42 U.S.C. § 1983. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (holding that private actors "performing the 'traditional state function' of operating a prison" "were 'acting under color of state law'" for purposes of § 1983 liability (quoting *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993))).

long held that this showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Dr. Feagins argues that Green cannot demonstrate that she was deliberately indifferent to his serious medical needs because the record evidence "show[s] that he received appropriate and timely medical treatment" for scabies. (Doc. No. 72, PageID# 340.) In particular, Dr. Feagins points to the medical records showing that Green was seen in the TTCC clinic on September 14, 2017; that she ordered laboratory tests on that day; that the test results came back on September 17, 2017; and that Green was provided with prescription cream used to treat scabies on September 20, 2017. (Doc. No. 72.) Green does not dispute these records; he does, however, dispute that the treatment he received was timely. Green asserts that "[t]he defendants knew [he] was suffering from scabies and made [him] wait for approximately 7 days to get Permethrin lotion[ ]." (Doc. No. 100, PageID# 517, ¶ 3.)

In cases where an incarcerated person "'has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Nevertheless, the Sixth Circuit has "held that '[w]hen prison officials are aware of a

8

prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity.'" *Id.* (alterations in original) (quoting *Blackmore*, 390 F.3d at 899); *see also id.* at 368–69 (collecting authority in support of the holding that "[e]ven relatively short periods of delay or neglect" may violate the Eighth Amendment); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (recognizing that "denial of medical care may result in pain and suffering[,] which no one suggests would serve any penological purpose").

Courts in this district have found that "scabies constitutes an objectively serious medical condition for purposes of an Eighth Amendment deliberate indifference claim" because it "is a condition that is generally diagnosed by a doctor and that, once diagnosed, mandates treatment." *Snead v. Corecivic of Tenn., LLC*, No. 3:17-cv-00949, 2020 WL 6469995, at *24 (M.D. Tenn. Apr. 6, 2020). However, even construing the record evidence in the light most favorable to Green, this Court finds that there is insufficient evidence to support a reasonable jury finding that Dr. Feagins was deliberately indifferent to Green's need for medical treatment and delayed that treatment for non-medical reasons. Green's bare assertion that the defendants knew he had scabies and made him wait for treatment is the kind of "merely colorable" and "not significantly probative" evidence that, without more, may not defeat a well-supported motion for summary judgment. *Anderson*, 477 U.S. at 249; *see also Blizzard*, 698 F.3d at 282. Green argues that the "Court took judicial notice of the fact that local jails experienced an outbreak of scabies in 2016 and 2017[,]" implying that Dr. Feagins should have known that Green's symptoms on September 14, 2017 were caused by scabies. (Doc. No. 77, PageID# 447 n.1.) The docket shows that, in determining whether Green was "subject to the 'three-strikes' provision under 28 U.S.C. § 1915(g)[,]" the Court took "judicial notice of the fact that the Metro-Davidson County Detention Facility experienced an

9

outbreak of scabies in 2016 and 2017." (Doc. No. 7, PageID# 35.) However, there is no evidence in the summary judgment record demonstrating that TTCC experienced a similar outbreak. Construed in the light most favorable to Green, the record evidence supports a finding that, at most, Dr. Feagins acted negligently by failing to diagnose and treat Green's scabies on the same day he visited the TTCC clinic. *Cf. Snead*, 2020 WL 6469995, at *22 (finding, based on the record evidence, "that the individual medical providers were, at worst, simply negligent in failing to promptly diagnose and treat the plaintiffs for scabies"). Mere negligence, however, does not support a finding of deliberate indifference. *Farmer*, 511 U.S. at 835.

Dr. Feagins is therefore entitled to summary judgment on Green's Eighth Amendment claim against her in her individual capacity, and Green is not entitled to summary judgment in his favor on this claim. Green's Eighth Amendment claim against Dr. Feagins in her official capacity as a CCS employee is properly considered as a claim against CCS. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### B. Green's Claims Against CCS

It is well established that a government body or private entity performing a government function "can be found liable under § 1983 . . . where the [entity] *itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). In such cases, the primary question is "whether there is a direct causal link between [the entity's] policy or custom and the alleged constitutional deprivation." *Id.*

Green has repeatedly stated that the only constitutional deprivation for which he is seeking to hold CCS responsible is its employees' individual failures to diagnose and treat his scabies on

September 14, 2017, which Green asserts were caused by CCS's failure to train those employees adequately. (Doc. No. 77, PageID# 447 (asserting that "Correct Care Solutions had/has a policy/custom of failing to train their employee(s) that caused the employee(s) to be deliberate[ly] indifferen[t] to [Green's need for] medical care"); *see also* Doc. Nos. 82, 83, 100.) "Inadequate training can be the basis for a § 1983 [government entity] liability claim when it 'amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact.'" *Snead*, 2020 WL 6469995, at *25 (quoting *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017)). However, failure-to-train claims are notoriously difficult to prove. The Supreme Court has held that a government entity's "'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). To prevail on a claim for failure to train, a plaintiff must show: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [government entity's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Id.* (quoting *Roell*, 870 F.3d at 487).

CCS argues that it is entitled to summary judgment because there is no genuine dispute of material fact that Green suffered a constitutional injury on September 14, 2017. (Doc. No. 72.) The Court has already found that no reasonable jury could find, based on the record evidence, that Dr. Feagins violated Green's Eighth Amendment rights that day. Construing the record evidence in the light most favorable to Green, the Court reaches the same conclusion regarding CCS employees Nurse Manzo and Nurse Crowder.

Once again, Green's bare assertion that the defendants knew he had scabies is not enough, by itself, to overcome the defendants' motion for summary judgment. *See Anderson*, 477 U.S. at 249; *see also Blizzard*, 698 F.3d at 282. The undisputed record evidence shows that Manzo

communicated Green's symptoms and request for medication to Dr. Feagins and followed Dr. Feagins's instructions to perform laboratory testing and decline Green's request for medication. Again, construed most favorably for Green, this evidence supports a finding that Manzo acted negligently. *Cf. Snead*, 2020 WL 6469995, at *22 (finding, based on the record evidence, "that the individual medical providers were, at worst, simply negligent in failing to promptly diagnose and treat the plaintiffs for scabies"). Further, Green has not pointed to any evidence in the record to show that Crowder participated in the September 14, 2017 clinic visit or that she knew of and failed to address his symptoms before she provided his medication on September 20, 2017. There is therefore insufficient evidence to support a reasonable jury finding that Manzo or Crowder was deliberately indifferent to Green's serious medical needs so as to violate his Eighth Amendment rights.

Green has not argued that the record evidence shows "a scenario in which the 'combined actions of multiple officials' could give rise to" a violation of his Eighth Amendment rights, and the Court finds that the record does not support such a finding. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 546–47 (6th Cir. 2003) (quoting *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002)); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 900–01 (6th Cir. 2018) (explaining that "several other circuits have . . . concluded that a municipality may be held liable under § 1983 in certain cases where no individual liability is shown"). Further, there is insufficient evidence to directly link any injury Green could show to a CCS custom or policy of failing to train its employees. Green admits that CCS "has a training program" but argues that the program must have been inadequate because of the allegedly deficient treatment he received. (Doc. No. 77, PageID# 447.) Green does not point to any evidence in the record demonstrating a pattern of similar constitutional violations by untrained CCS employees. Rather, Green asks the Court to

12
Case 3:17-cv-01293 Document 109 Filed 11/23/20 Page 12 of 13 PageID #: 560

infer that, if CCS had adequately trained its employees regarding the provision of medical care, he would have been diagnosed with scabies and treated for it on September 14, 2017. Without more evidentiary support, however, this argument cannot sustain Green's failure-to-train claim. *See Canton*, 489 U.S. at 391 (holding that, in the failure-to-train context, it is insufficient "to prove that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him [or her] to avoid the particular injury-causing conduct"). Green's proposed inference does not satisfy the required showing of "a direct causal link between" a custom or policy of facility to train employees and the constitutional deprivation he alleges. *Id.* at 385; *see also id.* at 390–91 ("That a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [government entity], for the [employee's] shortcomings may have resulted from factors other than a faulty training program.").

CCS is therefore entitled to summary judgment on Green's claims against it and against Dr. Feagins in her official capacity, and Green is not entitled to summary judgment on these claims.

## IV. Conclusion

It is apparent from Green's filings that he has worked diligently to prosecute his claims in this action. However, for the reasons explained above, there is not enough evidence to raise any genuine questions of fact for trial, and the defendants are entitled to summary judgment as a matter of law. The Court will therefore grant the defendants' motion for summary judgment (Doc. No. 71) and deny Green's motions for summary judgment (Doc. Nos. 77–79) in an accompanying order.

ALISTAIR E. NEWBERN
United States Magistrate Judge